The opinion of the Court was delivered by
•O’Neall, J.
Only two questions appear to be necessary to be considered here, in order to a decision of the cause: 1st Has the Court of Equity jurisdiction ? 2d. Is the post nuptial settlement of the- slaves, Daphne, Nero, Maria and Laura, on Mrs. Dinkins, now Mrs. Richbourg, and her issue,, a good legal conveyance, as against the complainants 1 Another question, raised by the defendants, as to the want of proper parties, will be considered under the first.
1. The jurisdiction of the Court of Equity extends to all cases in which the party seeking its aid has not plain and adequate remedy at law. The complainants are the creditors of John Dinkins, who died a lunatic, and on whose estate- admin *187 istration has not been granted. The defendants are supposed to be liable, as executors de son tort. Without deciding on the questions, whether, as such, they must account in this Court, and whether, in fact, they have so intermeddled with the goods of the deceased as to make them liable, it will be sufficient if, against them, even divested of that character, the complainants are entitled to the aid of the Court. The complainants claim as creditors, and if the settlement is void as to them, they are entitled to have it set aside. At law, can they even make the question? They cannot, for there they- cannot sue. The administrator is the only one who can maintain an action for ibe goods of an intestate. As between an administrator and a voluntary donee, the question of fraud against the rights of creditors cannot be raised at law. For, in this respect, the administrator .has no other legal rights than the intestate. A,voluntary deed, or a gift, would be good as between donor and donee, and, of necessary consequence, between the administrator and donee ; Shelton vs. Crosby, (a) The creditors are, therefore, obliged to seek the aid of this Court to have a voluntary deed set aside, for their rights are purely equitable. In seeking it, however, they must, if there is no administrator who can be made a party, administer themselves, so as legally to represent the rights of the intestate. Until this is done, it is impossible to say, by a legal judgment, that the complainants are creditors! For their debts are to be established against the deceased as legal subsisting demands, and this can only be done against his legal representative. If the defendant, Mrs. Richbourg, formerly Mrs. Dinkins, has any issue, her children must be made parties, for they have a direct interest in the matter now in issue, and to conclude them they must be properly before the Court.
2. W,e entertain no doubt that the post nuptial sottlement of the slaves, on the defendant, Mrs. Richbourg, and her issue, as against the existing creditors, is void. For we concur with the Chancellor in saying, that the marital rights of the husband attached on the property given to her by her father, and it *188 became his property. Her estate, both in interest and possession, was a legal one, and to be enjoyed in pr asentí, and of course vested.in the husband. Being his property, it was liable to the payment of his debts, unless he is legally divested of it. It would be sufficient, on this part of the case, to'say,-that the post nuptial settlement was not recorded according to law, and is therefore void; Price vs. White, (Bail. Eq. 244.) But I am not.disposed thus to evade the question made and argued by the Chancellor with so much ingenuity: if there is any uncertainty of the law in relation to this class of cases, for one I am disposed (as is my duty) to assume the responsibility of putting it forever at rest. -But after the cases of McElwee vs. Sutton, 2 Bail. 128, and Izard vs. Izard (Bail. Eq. 228,) decided at our last session in Charleston, it would seem that the law ought to be settled, if the opinion of the Court in the last resort is to be obligatory on the circuit. In each of these cases, it is said, that a voluntary conveyance, or gift, cannot be allowed to prevail against existing debts. The last of these cases was as strong an one in favour of the conveyance as can be presented to a Court: the donor, on his marriage, intended to make a settlement of his wife’s property; it was not however done; after her death, when he owned property to three times the amount of his debts, he settled all the property which he received in marriage with her] on her children; he owed at that time a debt to his father’s estate, of about $15,000. After some years he died, leaving this debt unpaid, and to the payment of it, the residue of his estate was insufficient, and it was held, unanimously, that, as to it, the settlement was void ; and the property settled liable to its payment. The rule, as stated in both of these cases, is, that slight indebtedness, such as for current expenses, will, not vitiate a gift. The meaning and application of the rule is perhaps, not distinctly seen, from the general way in which it is put. It never was intended' to say, that, if a debt was small, the gift might prevail against it, where diligence was used to collect it. It was intended as a guide in two cases : 1st. If a man slightly indebted gives away property, not at all *189 endangering the collection of his debts, and the creditor stands by until improvidences, or casualty has swept his debtor’s estate away ; in such a case, slight indebtedness shall not avoid the gift. 2d. If a subsequent creditor seeks to set aside a gift, slight indebtedness, existing at the time of' the gift, shall not vitiate the gift. This last, is, I am perfectly satisfied, the true application of the rule, and that, as to existing debts, whether great or small (if for their payment it is necessary) all gifts and voluntary conveyances, where the possession in fact still remains in the donor, must be set aside ; and whenever necessary, I am prepared to go to this extent. Reade vs. Livingston, 3 Johns. Ch. 500. Another proposition maintained by each of these cases, is, that where debts do exist, at the time of the gift, the test of the donor’s capability to give depends upon his final solvency. This is carrying out the principle already stated, and giving full effect to it, that a gift cannot prevail against existing, debts. If it becomes necessary for their payment that it should be set aside, it follows, that the gift being destroyed, the property is the debtor’s and liable to all his debts, and therefore subsequent as well as existing debts must be paid out of it. But on a still plainer and more familiar principle of Equity the rule must be so. For as to existing debts the property given-, and that retained is alike liable for their paymentas to junior'debts, the last may be their only fund. In Equity they have the unquestionable right to force the existing debts to exhaust the fund to which they can alone resort, before they can resort to the common fund. These rules are general ones, but like all others they have their exceptions. Ordinarily they would have no application to,cases, where a donor, retaining an abundance to pay his debts, gaye a part of his property to a child, and parted with the actual possession. There, if the creditor stood by and suffered the property retained to melt away, without collecting his debt, the laches would be his, and he must abide the consequence. But if a debtor gives away property, and still retains the actual possession, the ^editor has the right to suppose that all the property in his possession is liable to his *190 debt, and therefore his rights cannot be affected by a gift of which he is not bound to take notice. As to gifts consummated by .the transfer of actual possession, subsequent creditors cannot, of course, complain: for they do not trust the debtor on the faith of property not in his possession. - But if, after having made a gift, the donor retains possession, it is, as to the subsequent creditors, without actual or constructive notice, (by recording, when don'e in conformity to law,) absolutely void. Cordery vs. Zealy, 2 Bail., 205. For they are legally presumed to give credit on the faith of the property in their debtor’s possession. These legal rules, and their exceptions, I have stated with more than ordinary care, so that the complaint may not be again made, that the law is unsettled. They are rales to which all decisions must conform, as settled law. I enter into no reasoning upon them, for I presume it is only necessary to state them. Whether wise or not, they are such as appear to us to be legally right, and our reasons in support of them have been given in previous adjudications.
In the case before us, the debts now claimed, existed at the time the conveyance was made; and the property in the possession of the defendants seems to be the only available fund out of which they can now be paid. It is in vain to say thére was an abundance of other property to have paid it. Where is it? It has been squandered. By whom? No one can tell. Whose duty was it to have seen it applied to the payment of the debts ? The donor in the first place, and the donee after his death, should have seen to the application of it. ' It is wise policy to cast on donors and donees the 'extinguishment of existing debts, before they can set up a gift. “ Be just before you are generous,” is a command that cannot be too often repeated to debtors. But in another point of view the defence cannot avail the defendant; the bulk of the reservation, as it is called, to pay the donor’s debts, was iti choses in action : he could not convey away his visible property, and throw his creditors on this for payment; Cordery vs. Zealy.
The decrée of Chancellor Johnston is reversed ; the case *191 remanded to the Circuit Court, and the complainants have leave to amend their bill by making the administrator of John Dink-ins, deceased, a party complainant or defendant as they may choose; and also, to make the children of Mrs. Richbourg, formerly Dinkins,,(if she has any,) parties.
JohnsÓN and Harper, JJ., concurred.

'Decree reversed.

 Cited in Chapell vs. Brown, 1 Bail. 531.